John GRONSKI, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 95–23.

Supreme Court of Wyoming.

Jan. 22, 1996.

Sylvia Lee Hackl, State Public Defender; Gerald M. Gallivan, Director, Defender Aid Program; Bob L. Ring, Student Intern, for Appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Sr. Assistant Attorney General; Theodore E. Lauer, Director, Prosecution Assistance Program; John Harjehausen, Student Director, Prosecution Assistance Program, for Appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

GOLDEN, Chief Justice.

Appellant John Gronski (Gronski) appeals the district court's denial of his motion to suppress incriminating evidence found during a warrantless search of the trunk of his car and a duffle bag found in the trunk of his car.

We affirm.

## ISSUES

Gronski states the following issues:

I. Whether a warrantless search with probable cause of a vehicle is not authorized where the vehicle is no longer mobile because the police had effectively seized and immobilized the car by the arrest of the driver and seizure of the keys?

II. Assuming that the warrantless search of the car based on probable cause was lawful, was the subsequent warrantless search of the duffel bag found in the trunk of the car lawful under Article I, Section 4 of the Wyoming Constitution?

The State of Wyoming cites the issues as:

I. Did the warrantless search of a vehicle and its containers violate the Fourth Amendment of the United States Constitution where the vehicle was stopped and searched upon probable cause that it contained contraband?

II. Does Article I, Section 4 of the Wyoming Constitution afford additional protection beyond that provided by the Fourth Amendment of the United States Constitution, against warrantless searches of containers within a vehicle searched upon probable cause that it contains contraband?

## FACTS

The facts in this case are not disputed. On July 21, 1994, a reliable informant notified Detective Barrett (Barrett), a Laramie County Sheriff's Department detective, that someone named "John," later identified as Gronski, had about eight pounds of marijuana at an apartment on Myers Court. The informant told Barrett that a woman named Jennifer Carroll (Carroll) showed him a greenish duffle bag with bags of marijuana in it and that Gronski and his girlfriend discussed leaving town while the informant was in the apartment. The informant told Barrett he saw Gronski put the duffle bag in a blue Lincoln Continental and gave Barrett a par-

tial license plate number of the car. Based on this information, Barrett believed he had probable cause to obtain a search warrant. Barrett asked other deputies to maintain surveillance on the apartment and the car while he obtained a search warrant for the apartment and the car.

Before Barrett reached the station to prepare the paperwork for the warrant, however, he received notice that two people were driving away from the apartment in the car. Officers followed the car in unmarked vehicles. The officers were going to stop the car as soon as a marked patrol car arrived to assist them. Before a marked patrol car could arrive, however, Gronski parked the car in a store parking lot, got out of the car and locked it. When Gronski and his passenger (Carroll) left the car, officers stopped them, separated them, questioned them and took Gronski's car keys and driver's license. Officers asked Gronski for permission to search the car, but Gronski refused to give them permission. An officer told Gronski to sit in a patrol car while police questioned Carroll. During questioning, Carroll told officers there was marijuana either in the car or in the trunk of the car. Barrett decided to search the car and the trunk for the duffle bag without a search warrant. The duffle bag was found in the trunk and searched. Officers found approximately eight pounds of marijuana in the duffle bag.

Gronski filed a motion to suppress the evidence obtained in the car during the warrantless search. After an evidentiary hearing on the issue, the district court made findings of fact, determined the warrantless search was reasonable under the circumstances, and denied the motion to suppress. Gronski entered a conditional plea of guilty pursuant to Wyo.R.Crim.P. 11 and this appeal of the denial of his motion to suppress followed.

## DISCUSSION

 On review, the findings of the trial court regarding the motion to suppress are binding on this court unless clearly erroneous. *Neilson v. State,* 599 P.2d 1326, 1330 (Wyo.1979), *cert. denied,* 444 U.S. 1079, 100 S.Ct. 1031, 62 L.Ed.2d 763 (1980). The issue of law, whether an unreasonable search or seizure occurred in violation of constitutional rights, is reviewed de novo. *Wilson v. State,* 874 P.2d 215, 218 (Wyo.1994). The trial court found:

> [T]he officers had probable cause to believe that Gronski's vehicle contained the duffle bag of marijuana. The informant's tip, along with the officers' own verification and observations, provided that probable cause. Even if exigent circumstances were to be required, they are present. The officers had reason to believe that Gronski and his passenger were preparing to leave the jurisdiction with the marijuana. Detective Barrett was on the way to obtain search warrants when Gronski and his passenger left the Myers Court residence. Once the vehicle was in motion, there was no time to obtain a warrant. The search was reasonable under the Fourth Amendment and the Wyoming Constitution.

Gronski contends that a finding of probable cause is not sufficient to search a seized vehicle. He claims he was under arrest before the warrantless search and that, as a result of his arrest, the vehicle was immobilized. Thus he raises the specific issue of whether a warrantless search of an immobilized vehicle is authorized under current case law. Analyzing federal precedent, Gronski concludes that the warrantless search was not authorized under the "automobile exception" to the warrant requirement of the Fourth Amendment because that exception requires probable cause and exigency. In his view, United States Supreme Court decisions apply the automobile exception to the warrant requirement because exigent circumstances exist preventing an opportunity to obtain a warrant. Since he believes the car was "immobilized," no exigency supported the need for an immediate search and the police should have obtained a warrant.

In response, the State asserts that the United States Supreme Court's decisions of *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); and *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), permit warrantless

searches of automobiles and closed containers in them upon probable cause. In this case, the State argues the police had probable cause to believe the car held marijuana, probably in the duffle bag, and their warrantless search of both was justified and constitutional.

■ The warrant clauses of the Fourth Amendment to the United States Constitution and Art. 1, § 4 of the Wyoming Constitution prohibit searches conducted outside the judicial process without prior approval by judge or magistrate. *Roose v. State,* 759 P.2d 478, 481 (Wyo.1988). Warrantless searches and seizures are unreasonable per se under both the Fourth Amendment and Art. 1, § 4. *Hunter v. State,* 704 P.2d 713, 715 (Wyo.1985). This rule is subject to only a few specifically established and well-delineated exceptions. *Id.* The search and/or seizure of an automobile upon probable cause is one of the recognized exceptions. *Id.* In an earlier decision, this court recognized that differences exist between motor vehicles and other property, which permit warrantless searches of automobiles in circumstances in which warrantless searches would not be reasonable in other contexts. *Neilson,* 599 P.2d at 1330. The Fourth Amendment to the United States Constitution and Art. 1, § 4 of the Wyoming Constitution prohibit unreasonable searches and seizures. *Id.* Reasonableness is determined by all the circumstances of each case. *Id.*

■ In *Hunter,* the claimant challenged the warrantless search of a car held by police and known to be stolen and the warrantless search of containers in that car. This court found that officers had probable cause to believe that contraband, in the form of personal belongings which were stolen along with the car, could be in the car or containers and held that probable cause existed justifying a warrantless search of the car and any closed containers found within the car. *Hunter,* 704 P.2d at 715–717. The court's holding resulted from a determination that the scope of a warrantless search of a vehicle is defined by the object of the search and the places in which there is probable cause to believe it may be found. *Hunter,* 704 P.2d at 717. *Hunter* relied upon *United States v.*

*Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), which held that, on the basis of probable cause to search a car, the automobile exception permits a search of the entire car and anything in it that could contain the items being searched for. *Hunter,* 704 P.2d at 717.

■ In this case, the district court found that the officers had probable cause to believe marijuana was in the duffle bag which had been placed in the car. On that factual basis, conducting a warrantless search of the duffle bag was reasonable and constitutional. In his appeal, Gronski does not take issue with the scope of the search, but instead insists that no exigency existed requiring an immediate search. In his view, the automobile exception is defined as probable cause and exigency; it is constitutional only because of the mobility of the vehicle. If the vehicle is immobilized, the exigency ceases to exist and the constitution prohibits a warrantless search.

This court's decision in *Neilson* thoroughly explained the exigency presented by automobiles as identified in *Carroll* and *Chambers.* Part of that explanation bears repeating here:

"Neither *Carroll, supra,* nor other cases in this Court require or suggest that in every conceivable circumstance the search of an auto even with probable cause may be made without the extra protection for privacy that a warrant affords. But the circumstances that furnish probable cause to search a particular auto for particular articles are most often unforeseeable; moreover, the opportunity to search is fleeting since a car is readily movable. Where this is true, as in *Carroll* and the case before us now, if an effective search is to be made at any time, either the search must be made immediately without a warrant or the car itself must be seized and held without a warrant for whatever period is necessary to obtain a warrant for the search.

\* \* \* \* \* \*

Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably,

only the 'lesser' intrusion is permissible until the magistrate authorizes the 'greater.' But which is the 'greater' and which the 'lesser' intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.

On the facts before us, the blue station wagon could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeting target for a search. The probable-cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained. * * *."

*Neilson,* 599 P.2d at 1332, quoting *Chambers,* 399 U.S. at 50–52, 90 S.Ct. at 1980–81.

Our *Neilson* decision recognized this rationale as valid and adopted this federal precedent when considering the reasonableness of a warrantless automobile search. *Neilson,* 599 P.2d at 1332. This rationale is applicable to the case at hand on the question of reasonableness. In this case, the district court's factual determination that probable cause existed justifying the warrantless search for contraband in a container is confirmed by the evidence in the record. Further, the record supports the district court's finding that at the time there was probable cause to believe the duffle bag contained contraband and the vehicle was not immobilized. As a matter of law, the car was properly searched when it was stopped since at the time of the stop there was probable cause to search and it was a fleeting target for a search. The choice presented to officers was either an immediate warrantless search or a seizure

until a warrant could be obtained. Either course would have been reasonable. *Id.; see Hunter,* 704 P.2d at 717. The trial court's denial of the motion to suppress is affirmed.

■ Gronski's next argument is that a separate analysis is required under the Wyoming Constitution's search and seizure provision because it offers greater protection to a citizen than the federal constitution. He asserts that greater protection permits the duffle bag to be seized but prohibits a search of it without a warrant. The State, relying on *Saldana v. State,* 846 P.2d 604 (Wyo.1993), argues that Gronski has not proffered the proper constitutional analysis or cogent argument to warrant this court's concluding the provision offers greater protection as recommended by this court. *Saldana,* 846 P.2d at 622 (Golden, J., concurring).

In *Saldana,* the appellant relied exclusively upon the state constitution to appeal a search and seizure of his telephone records. This court ruled that, on the facts of that case, the state constitution did not afford increased protection. *Saldana,* 846 P.2d at 612. At oral argument, Gronski asserted that the recommended technique in Justice Golden's concurring opinion in *Saldana* was inapposite in this case because information on factors concerning constitutional history, pre-existing state law or matters of particular state or local concern at the time of ratification did not exist. In Gronski's view, the only available analytical technique was to determine whether Wyoming values required a judicial interpretation that this provision afforded more protection than its federal counterpart.

■ This assertion, unaccompanied by authority or argument, is insufficient to persuade us to consider whether the Wyoming Constitution's Art. 1, § 4 should be independently interpreted as offering greater protection than its federal counterpart. Our approach in the search and seizure area has usually employed the method of reading the state and federal constitutional provisions together and treating the scope of the state provision the same as the scope of the federal provision. *Parkhurst v. State,* 628 P.2d 1369, 1374 (Wyo.1981), *cert. denied,* 454 U.S. 899, 102 S.Ct. 402, 70 L.Ed.2d 216 (1981),

*Hunter,* 704 P.2d at 715; *Neilson,* 599 P.2d at 1330. In recent cases, invitations to independently interpret the state provision, unaccompanied by appropriate constitutional analysis, have been rejected. *Guerra v. State,* 897 P.2d 447, 451 (Wyo.1995); *Saldana,* 846 P.2d at 612; *Goettl v. State,* 842 P.2d 549, 557 (Wyo.1992). Until appropriate state constitutional analysis is presented, an invitation that we should expand the rights protected by the state constitution beyond the protection provided by the federal constitution will not receive the court's attention. *Goettl,* 842 P.2d at 557.

Affirmed.