2008 WY 54

Daniel Ray HOLMAN, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 06–140.

Supreme Court of Wyoming.

May 14, 2008.

Representing Appellant: Thomas R. Smith of Chapman Valdez at Beech Street Law Office, Casper, Wyoming.

Representing Appellee: Patrick J. Crank, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Eric A. Johnson, Faculty Director, Prosecution Assistance Program; and Kevin Kessner, Student Director, Prosecution Assistance Program. Argument by Mr. Kessner.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1] Daniel Ray Holman ("the appellant") pled guilty to one count of third or subsequent possession of a controlled substance, specifically, methamphetamine, in violation of Wyo. Stat. Ann. § 35-7-1031(c)(i) (LexisNexis 2007), reserving his right to appeal the district court's denial of his motion to suppress evidence seized during the search of his car at the time of his arrest.[1] We reverse because the search of the appellant's vehicle violated the appellant's right to be free from unreasonable search under Article 1, Section 4 of the Wyoming Constitution.

## ISSUE

[¶ 2] Whether the search at issue violated Article 1, Section 4 of the Wyoming Constitution?

## FACTS

[¶ 3] On July 28, 2005, Casper Police Officer Joseph Moody was sitting in his patrol car near the North Casper ball fields when he was approached by Telicia Ramon. Ms. Ramon pointed to the appellant's vehicle and stated that the driver had been acting suspicious, watching children through binoculars, and moving when people approached. Upon receiving this information, Officer Moody proceeded to the area where the appellant was parked so that he could contact the appellant. Officer Moody approached the appellant's vehicle just as the appellant began to drive away. Officer Moody followed the appellant and stopped him before he left the ball field area.

[¶ 4] Upon stopping the appellant's vehicle, Officer Moody approached and asked for the appellant's license, registration, and proof of insurance. The appellant did not have a driver's license but provided the officer with his Wyoming identification card. Additionally, Officer Moody asked what the appellant was doing in the area. The appellant gave the names of his two sons and explained he was looking for them as they were supposed to be playing one of the sporting events in the area. When asked if he was looking at children through binoculars, the appellant told Officer Moody that he was using a monocular and showed it to the officer.

[¶ 5] Dispatch informed Officer Moody that the appellant's driver's license had been suspended. Shortly thereafter, Officer Moody's supervisor, Sergeant Malone, arrived. The officers placed the appellant under arrest for driving with a suspended license, handcuffed him and placed him in the back of Officer Moody's police car.

[¶ 6] After the appellant's arrest, Officer Moody and Sergeant Malone searched the appellant's vehicle. Their search revealed a

---

1. *See* W.R.Cr.P. 11(e), which provides for entry of a conditional plea with preservation of the

right to seek review of the denial of a pretrial motion.

small, transparent, sealable plastic baggie containing a small amount of white crystal substance in the center console between the front driver and passenger seats. A field test later confirmed that the substance was methamphetamine.

[¶ 7] The appellant was charged with third or subsequent possession of a controlled substance, specifically, methamphetamine, in violation of Wyo. Stat. Ann. § 35-7-1031(c)(i) (LexisNexis 2007). He filed a Motion to Suppress, which motion was denied. The appellant then entered a conditional guilty plea, was sentenced, and filed a timely notice of appeal.

## STANDARD OF REVIEW

[¶ 8] Findings on factual issues made by the district court considering a motion to suppress are not disturbed on appeal unless they are clearly erroneous. *Wilson v. State*, 874 P.2d 215, 218 (Wyo. 1994). Since the district court conducts the hearing on the motion to suppress and has the opportunity to assess the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions, evidence is viewed in the light most favorable to the district court's determination. *Id.* The issue of law, whether an unreasonable search or seizure has occurred in violation of constitutional rights, is reviewed de novo. *Id.; Brown v. State*, 944 P.2d 1168, 1170–71 (Wyo.1997).

*Grant v. State*, 2004 WY 45, ¶ 10, 88 P.3d 1016, 1018 (Wyo.2004) (quoting *McChesney v. State*, 988 P.2d 1071, 1074 (Wyo.1999)).

## DISCUSSION

[¶ 9] The appellant challenges the denial of his motion to suppress the evidence discovered when his vehicle was searched following his arrest. He argues that the search was unreasonable and violated Article 1, Section 4 of the Wyoming Constitution.[2] In *New York v. Belton*, 453 U.S. 454, 101 S.Ct.

2860, 69 L.Ed.2d 768 (1981), the United States Supreme Court held that, under the Fourth Amendment to the United States Constitution, an officer arresting an occupant of a vehicle may contemporaneously search the passenger compartment of that vehicle, incident to that arrest. In *Vasquez v. State*, 990 P.2d 476, 480–89 (Wyo.1999), we rejected the minimal protection that *Belton's* "bright-line rule" provides, and we held that Article 1, Section 4 of the Wyoming Constitution provides greater protection. Specifically, we announced that Article 1, Section 4 requires the search of an arrestee's vehicle to be "reasonable under all of the circumstances." *Id.* at 489.

### Exceptions to the Warrant Requirement

[¶ 10] "We have stated that under both constitutions, warrantless searches and seizures are per se unreasonable unless they are justified by probable cause and established exceptions." *Pena v. State*, 2004 WY 115, ¶ 29, 98 P.3d 857, 870 (Wyo.2004).

Consent is one exception to the warrant requirement. *Id.* Other exceptions include a search: 1) of an arrested suspect and the area within his control; 2) conducted while in pursuit of a fleeing suspect; 3) to prevent the imminent destruction of evidence; 4) of an automobile upon probable cause; 5) which results when an object is inadvertently in the plain view of police officers while they are where they have a right to be; and 6) which results from an entry into a dwelling in order to prevent loss of life or property (also referred to as the emergency assistance exception).

*Moulton v. State*, 2006 WY 152, ¶ 16, 148 P.3d 38, 43 (Wyo.2006). We have recognized that these exceptions extend to automobiles and have decided that "a search of an automobile without a warrant cannot be said to be unreasonable under all circumstances, and specifically allowed automobile searches when there is probable cause for believing that a vehicle is carrying contraband or ille-

---

**2.** Article 1, Section 4 of the Wyoming Constitution provides as follows:

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be

violated, and no warrant shall issue but upon probable cause, supported by affidavit, particularly describing the place to be searched or the person or thing to be seized.

gal goods and searches incidental to lawful arrest." *Vasquez*, 990 P.2d at 487. "When a defendant properly objects to or moves for suppression of evidence seized, the State bears the burden of proving that one of the exceptions applies." *Moulton*, 2006 WY 152, ¶ 16, 148 P.3d at 43.

### Specific Facts Surrounding the Search

[¶ 11] Before evaluating whether any of the above-mentioned exceptions apply here (*see supra* ¶ 10), we will examine the particular facts surrounding the search. Those facts are derived from three different sources in the record: 1) the Affidavit Supporting Complaint, 2) Officer Moody's testimony at the preliminary hearing, and 3) Officer Moody's testimony at the motion hearing. The factual description of the circumstances surrounding the search outlined in the Affidavit Supporting Complaint are quite sparse and merely state that the appellant was arrested for driving under suspension, that he was handcuffed, and that Officer Moody and Sergeant Malone then searched his vehicle.

[¶ 12] At the preliminary hearing, Officer Moody provided additional testimony concerning the search.

[Defense Counsel]: Okay. So, [the appellant] gave permission to move the vehicle, lock it and leave it at the ball fields?

[Officer Moody]: Yes, sir.

[Defense Counsel]: Okay. What happened after that permission was given?

[Officer Moody]: Uh, I searched the vehicle; found the suspected methamphetamine. Uh, like I said, I myself, never had the intention of leaving it except for that Sergeant Malone was gonna say to because he got permission. But then once we found the methamphetamine, we towed it as we usually do for driving under suspension.

[Defense Counsel]: And it was searched before it was moved to the parking lot?

[Officer Moody]: No.

[Defense Counsel]: Okay, so . . .

[Officer Moody]: Well, it was searched. I might have just misunderstood your question. It was searched before it was moved. It was never moved to the parking lot.

Right where, when I made the traffic stop, where he stopped the vehicle is where I searched it.

[Defense Counsel]: Okay. And it was searched after Sergeant Malone asked [the appellant] if he minded if the vehicle was moved to the parking lot and locked up.

[Officer Moody]: Yes, sir.

[Defense Counsel]: And, and why did you search the vehicle?

[Officer Moody]: Search incident to arrest. That's what I always do.

Finally, at the hearing on the motion to suppress, Officer Moody testified as follows:

[Prosecutor]: Now, Officer, counsel asked you some questions about the options between parking the vehicle versus towing the vehicle. My question is at some point in time, did you determine that you weren't going to search the vehicle—

[Officer Moody]: No.

[Prosecutor]:—after you placed the defendant under oath (sic)?

[Officer Moody]: No. Once he's arrested, I'm going to search the vehicle regardless of whether we're going to leave it parked there or move it to a different spot to be parked or tow it or have it picked up by somebody that he trusts. It doesn't matter. I'm going to search the vehicle.

[Prosecutor]: And the grounds for your searching the vehicle is what?

[Officer Moody]: Search incident to arrest.

[Prosecutor]: All right. And specifically what kind of things are you looking for in a search incident to arrest?

[Officer Moody]: Weapons, contraband, anything that may be leading towards what I initially stopped him for, if he's—if he's got child pornography or something of that nature in his car. Any illegal contraband or weapons that may be dangerous to us.

[¶ 13] Officer Moody's stated reason for conducting the search of appellant's vehicle was singular and clear: search incident to arrest. Depending on the scope of the search, this justification might be sufficient under federal law to sustain the search. However, as previously noted (*see supra*

¶ 10), Wyoming law requires more. We must examine the totality of the circumstances and determine whether the warrantless search, even a search incident to a lawful arrest, was "reasonable under all the circumstances."

[¶ 14] The appellant specifically contends that the search was unreasonable because nothing in the record indicates that his vehicle was searched in the interest of officer safety or that his vehicle contained evidence pertaining to the crime for which he was arrested. The appellant's arguments relate to two specific exceptions to the warrant requirement: search incident to arrest and search of a vehicle based upon probable cause.

### Search Incident to Arrest

[¶ 15] We will first examine whether the search was reasonable as a search incident to arrest. To begin, we note that the "rationale for permitting searches incident to arrest is to prevent the arrestee from reaching weapons or concealing or destroying evidence." *Vasquez*, 990 P.2d at 489.

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. *In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction.*

*Roose v. State*, 759 P.2d 478, 482 (Wyo.1988) (emphasis in original) (quoting *Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969), *reh'g denied*, 396 U.S. 869, 90 S.Ct. 36, 24 L.Ed.2d 124 (1969)). We have extended this exception to allow the search of a vehicle incident to the driver's arrest where officer safety or other exigent circumstances warrant such a search. *See Clark v. State*, 2006 WY 88, ¶ 21, 138 P.3d 677, 682 (Wyo.2006); *Cotton v. State*, 2005 WY 115, ¶¶ 20–22, 119 P.3d 931, 935–36 (Wyo.2005); *Vasquez*, 990 P.2d at 489. This exception will not apply, however, where

safety concerns or other exigent circumstances surrounding the arrest and search are not discernable in the record. *Pierce v. State*, 2007 WY 182, ¶¶ 14, 21, 171 P.3d 525, 531–32, 535 (Wyo.2007).

[¶ 16] A brief review of the above-cited cases is helpful in understanding the proper application of this exception. In *Vasquez v. State*, the driver was arrested for driving under the influence and his truck was searched. *Vasquez*, 990 P.2d at 479. We concluded that the presence of two adult passengers and shell casings in the bed and passenger compartment of the truck presented safety concerns which permitted a vehicle search incident to arrest. *Id.* at 489.

[¶ 17] In *Cotton v. State*, after the driver was arrested, he asked a passenger to retrieve a shirt from the back of the vehicle he was driving and take it home. *Cotton*, 2005 WY 115, ¶ 5, 119 P.3d at 932. An officer retrieved the shirt and discovered a bag of crack cocaine in the pocket. *Id.* We sustained the search, stating that "[t]he presence of an adult passenger presented a safety concern" and "the assisting deputy was justified on the basis of safety concerns in retrieving the shirt himself rather than allowing the passenger to go to the back of the vehicle. He was further justified in checking the shirt for weapons before handing it to the passenger." *Id.* at ¶ 22, 119 P.3d at 936.

[¶ 18] Finally, in *Clark v. State*, the driver of the vehicle was arrested for driving with a suspended license. *Clark*, 2006 WY 88, ¶ 6, 138 P.3d at 679. The arresting officer recognized the passenger from a prior arrest on drug charges and detected the odor of alcohol coming from inside the vehicle. *Id.* at ¶ 19, 138 P.3d at 682. The officer noted suspicious behavior on the part of both the driver and the passenger, including the passenger momentarily disappearing from view inside the vehicle. *Id.* Additionally, the officer noted that a box in the back seat of the vehicle, which was in plain view at one point, was partially covered up by someone inside the vehicle. *Id.* at ¶ 21, 138 P.3d at 682. Given all of these circumstances, we concluded that the search was reasonable under all the circumstances because of officer safety concerns. *Id.*

[¶ 19] In each of these cases, the search incident to arrest exception applied because the circumstances surrounding the arrest presented safety concerns. These cases can be contrasted with our recent decision in *Pierce v. State*. In *Pierce*, the defendant was arrested for driving with a suspended license and his vehicle was then searched. *Pierce*, 2007 WY 182, ¶¶ 4, 7, 171 P.3d at 527–28. Although the search of the defendant's vehicle was conducted incident to a lawful arrest, we concluded that the search was unreasonable. *Id.* at ¶ 14, 171 P.3d at 531. Among the factual circumstances cited in support of our decision were:

1. The officer testified that he did not observe any signs that the appellant was under the influence of alcohol or drugs.

. . . .

5. Our analysis of the circumstances does not reveal any reasonable basis for the officer to believe the appellant was armed or that there were weapons in the vehicle. The appellant was arrested for driving under suspension and failing to maintain liability insurance. The officer's "pat down" search of the appellant's person did not uncover any weapons.

6. There were no passengers in the vehicle, two officers were at the scene, and the officers and the appellant had already left the scene by the time the vehicle's owner retrieved the vehicle.

7. The appellant was handcuffed and placed in a patrol car immediately prior to, and during, the search. Handcuffs are by no means foolproof (*see Mackrill v. State*, 2004 WY 129, ¶¶ 19–21, 100 P.3d 361, 368–69 (Wyo.2004)), but we must view this fact in light of all of the other facts in this case.

8. The appellant did not exhibit any furtive or suspicious activity, particularly with respect to the contents of the vehicle.

9. The State does not contend in its appellate brief that considerations such as the time of day, the setting, the temporary registration tag issue, etc. contributed to any kind of safety concern in this case. The officer did not refer to any specific officer safety concerns that would have arisen prior to the time he initiated the search.

10. The officer admittedly had no other information about the appellant "as opposed to any other citizen." By the officer's own account, he and the appellant engaged in a friendly conversation, the appellant was honest about his suspended license, and the appellant seemingly offered a reasonable explanation for his presence at the park (the vehicle's contents, to the extent they were visible to the officer, would seem objectively to support the appellant's explanation).

11. The appellant cooperated with the officer and did not resist arrest or become combative with the officer.

*Id.* at ¶ 14, 171 P.3d at 531–32. Based on these facts, we concluded that the state failed in its burden to prove that the search incident to arrest exception applied because safety concerns were not articulable from the totality of the circumstances. *Id.*

[¶ 20] We now turn to whether the facts of the present case justify the search as a search incident to arrest. Officer Moody offered no testimony indicating that the search of appellant's vehicle was conducted to ensure officer safety or preserve evidence. Although he testified that when conducting searches incident to arrest he is usually looking for weapons or contraband, he provided no testimony regarding specific facts and circumstances indicating these concerns were present in this case. Likewise, our review of the record reveals no objectively identifiable facts indicating that appellant's vehicle was searched to ensure officer safety or that other exigent circumstances existed which would have made the search of appellant's vehicle reasonable. Consequently, we find that the State failed to meet its burden of proving that the search incident to arrest exception applied in these circumstances.

### Search of a Vehicle Based on Probable Cause

[¶ 21] We now turn to whether the search of appellant's vehicle can be justified under the search of a vehicle based on probable cause exception to the warrant requirement. We have recognized that the inherent mobility of vehicles and the diminished ex-

pectation of privacy involved in the use and regulation of automobiles "permit warrantless searches of automobiles in circumstances in which warrantless searches would not be reasonable in other contexts." *Neilson v. State,* 599 P.2d 1326, 1330 (Wyo.1979). This exception allows police to "search an automobile without having a warrant when they have probable cause to believe that the car contains evidence of a crime or contraband." *Borgwardt v. State,* 946 P.2d 805, 807 (Wyo. 1997).

Probable cause justifying a search of a vehicle is established if, under the totality of the circumstances, there is a fair probability that the car contains contraband or evidence of a crime. *Vassar v. State,* 2004 WY 125, ¶ 21, 99 P.3d 987, 996 (Wyo.2004) (citing *United States v. Downs,* 151 F.3d 1301, 1303 (10th Cir.1998)); *Gilkison v. State,* 404 P.2d 755, 757–58 (Wyo.1965). The facts and circumstances supporting a determination of probable cause "need not rise to the level of proof of guilt, nor even to the level of prima facie evidence of guilt." *Jandro v. State,* 781 P.2d 512, 518 (Wyo.1989).

*McKenney v. State,* 2007 WY 129, ¶ 8, 165 P.3d 96, 98 (Wyo.2007). Probable cause necessary to justify a warrantless vehicle search exists where "the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Damato v. State,* 2003 WY 13, ¶ 17, 64 P.3d 700, 707 (Wyo.2003) (quoting *Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 1661, 134 L.Ed.2d 911 (1996)).

[¶ 22] We have said that "[a]lthough a warrantless search of an automobile may be legal without an arrest, the basis for the probable cause for such search may be the same as that for probable cause for an arrest without a warrant." *Neilson,* 599 P.2d at 1333. While the probable cause supporting an arrest may also justify a vehicle search in many instances, this is not always true.

Not every traffic arrest justifies a search without a warrant. In the case of the usual simple traffic offense, the arrestee does not have in his or her possession physical evidence of that offense; there-

fore, a search will not serve the usual objectives of a warrantless search incident to an arrest, specifically, the seizure of evidence of the offense for which the arrest is made or the protection of the officer's safety.

68 Am.Jur.2d *Search and Seizures* § 116. In that regard, we have said: "Law enforcement officers may not use the pretext of an arrest on a minor charge as a means to engage in an overbroad search to uncover evidence of an unrelated offense." *Brown v. State,* 738 P.2d 1092, 1097 (Wyo.1987). Therefore, "[t]he nature of the traffic offense remains relevant in determining whether the search and seizure was 'reasonable under all of the circumstances' as required by Article 1, Section 4." *Fertig v. State,* 2006 WY 148, ¶ 28, 146 P.3d 492, 501 (Wyo.2006).

[¶ 23] We applied the "search of a vehicle based on probable cause" exception in *Vasquez.* There, the driver was arrested for driving while intoxicated and his vehicle was searched. *Vasquez,* 990 P.2d at 479. We sustained the search of the "passenger compartment of the vehicle for any intoxicant, alcohol or narcotic, as evidence related to the crime of driving while under the influence." *Id.* at 488. The nature of the crime for which Vasquez was arrested provided the probable cause necessary to justify searching the vehicle for evidence of that crime. By contrast, in *Pierce,* the defendant was arrested for driving under a suspended license. *Pierce,* 2007 WY 182, ¶ 4, 171 P.3d at 527. We determined that the search conducted in that case was unreasonable and concluded, among other things, that "[t]here was no reasonable possibility that evidence of the crimes for which the appellant was arrested remained in the vehicle." *Id.* at ¶ 14, 171 P.3d at 531.

■ [¶ 24] The facts and circumstances in this case are more analogous to those presented in *Pierce.* The appellant here was arrested for driving under a suspended license. When Officer Moody was asked to specify the grounds for searching the vehicle, he simply responded "search incident to arrest." While he mentioned weapons, contraband, and the possibility of child pornography, Officer Moody provided no testimony

regarding specific facts and circumstances that would have given him probable cause to believe that any of these items were actually present in the appellant's vehicle. Likewise, our review reveals no circumstances which, in our estimation, would cause a reasonably prudent person to believe that the vehicle contained evidence of the crime for which the appellant was arrested, or any other crime.

### Other Contentions

[¶ 25] In addition to the two exceptions addressed above, the State contends the search was reasonable because of 1) the limited scope of the search; 2) the appellant's diminished privacy interest in his vehicle; and 3) the officers' need to secure the vehicle. The State does not characterize these arguments as exceptions to the warrant requirement; instead, the State appears to contend that these are factors which the district court properly weighed in finding the search to be reasonable under all the circumstances.

[¶ 26] With regard to the scope of the search, the State argues that search was reasonable because "the discovery of drugs in the Appellant's vehicle occurred not during a full-blown search of the entire vehicle, as *Belton* authorizes, but during a limited 'wing-span' search, as authorized by *Chimel.*"

[¶ 27] We have said the following with regard to the proper scope of a search:

> ... We hold that the scope of the warrantless search authorized by [the automobile] exception is no broader and no narrower than a magistrate could legitimately authorize by warrant. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.

*Vassar v. State,* 2004 WY 125, ¶ 21, 99 P.3d 987, 996 (Wyo.2004) (quoting *United States v. Ross,* 456 U.S. 798, 825, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572 (1982) (footnotes omitted)).

[¶ 28] The limited nature of the scope of the search in this case does not justify the otherwise impermissible search. As previously noted, nothing in the record before us indicates that the officers had probable cause to believe the vehicle contained evidence of any crime. Without probable cause or some officer safety concern, the scope of the search, however limited, is immaterial.

[¶ 29] The State next argues that because the appellant's privacy interest in his vehicle was slight, the search of his vehicle was reasonable. It is true that a driver of a vehicle has a diminished privacy interest in the contents of his vehicle. *Vasquez,* 990 P.2d at 488. This does not mean, however, that the driver has *no* expectation of privacy.

> This lesser expectation of privacy does not give the police the license to stop and detain or enter at will. Some justification for a stop and greater justification for a search and seizure is required. In addition, there has to be some expectation of privacy in parts of the car shielded from public view, such as the trunk, glove compartment, and under the seats.

1 John Wesley Hall, Jr., Search and Seizure § 18.4 (3d ed. 2000). In that regard, this Court has said "[w]hile we have acknowledged the importance of drug interdiction activities, we have also expressed willingness to protect the privacy rights of citizens under Article 1, Section 4, if police conduct is unreasonable under all the circumstances." *Fertig,* 2006 WY 148, ¶ 20, 146 P.3d at 498.

[¶ 30] It is true that appellant possessed a diminished expectation of privacy in his vehicle. However, because the officers did not have probable cause to search his vehicle, and the search was not conducted to ensure officer safety, the search of his vehicle was an unreasonable intrusion on his protected privacy interest.

[¶ 31] Finally, the State contends that the search was reasonable because of the need to secure the appellant's vehicle. The State does not cite any cases that stand for the proposition that a vehicle may be searched any time the driver is arrested and the vehicle is moved to a different location. Instead, the State points to the particular circumstances to justify this search, arguing:

> With Appellant's arrest, the police were left with a choice between either impounding his vehicle (which obviously would have necessitated an inventory search) or leav-

ing the vehicle temporarily in the vicinity of the Casper ballfields, where hundreds of people were present. Appellant chose to have the officers park his vehicle near the ballfields. It would have been grossly irresponsible for the officers simply to park the vehicle there with a clear plastic baggie of methamphetamine in the center console.

We agree that it would be irresponsible to simply park a vehicle in a public place if an officer had cause to believe that the vehicle contained contraband or other dangerous items. However, if that were true, the vehicle exception to the warrant requirement would apply and the search would be proper. That is not what occurred here. The officers here searched the vehicle without any reason to believe it contained evidence of any crime. The last sentence of the quotation from the State's brief shows an attempt to justify the search by what was found during the search. That, of course, turns the constitutional rule on its head.

[¶ 32] The State also contends that the search was necessary to ensure "at least that the vehicle's contents are secure and do not pose a risk to the public." A search for such a purpose would necessarily be a thorough search of the entire vehicle, as contraband or other dangerous items could potentially be located in any part of the vehicle. Such a search would be inconsistent with the protections afforded by the Fourth Amendment to the United States Constitution, as even *Belton* limits vehicle searches incident to arrest to the passenger compartment. *Belton*, 453 U.S. at 460, 101 S.Ct. at 2864. Furthermore, allowing such a search would be entirely at odds with *Vasquez*, as we would be creating a bright-line rule allowing the search of an entire vehicle any time a lone driver is arrested, irrespective of probable cause or other surrounding circumstances.

## CONCLUSION

[¶ 33] Upon reviewing the totality of circumstances surrounding the search of the appellant's vehicle, we conclude that the search was not reasonable under any of the recognized exceptions to the warrant requirement and therefore violated Article I, Section 4 of the Wyoming Constitution. We reverse the denial of appellant's suppression motion and remand this matter to the district court for further proceedings consistent with this opinion.

HILL, Justice, specially concurring.

[¶ 34] I write separately so as to attempt to further limn my view of this Court's search and seizure jurisprudence. I will not attempt to do a comprehensive review of the many cases that have been issued by this Court over the last half decade. My intention here is simply to distinguish this case, as I see it, from *Pierce v. State*, 2007 WY 182, ¶ 37, 171 P.3d 525, 539 (Wyo.2007) and *Sam v. State*, 2008 WY 25, 177 P.3d 1173 (Wyo. 2008) as I analyzed those matters.

[¶ 35] In all such cases, the goal of our review is to determine whether or not the search and seizure was "reasonable" under the facts and circumstances presented by any given case. In this process, it is my conviction that we must also keep well in mind that this Court is not a fact finding court. In reviewing a trial court's ruling on a motion to suppress evidence, we do not interfere with the trial court's findings of fact unless the findings are clearly erroneous. We view the evidence in the light most favorable to the trial court's determination because the trial court has an opportunity at the evidentiary hearing to assess the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions. Only then does the constitutionality of a particular search or seizure become a question of law that we review *de novo*. When I applied that analysis in *Pierce* and *Sam*, I concluded that the searches at issue were reasonable as contemplated by the Wyoming Constitution. When I apply that standard to the facts of this case, my conclusion is that the stop, search and seizure at issue herein was one prompted more by suspicions or hunches than by concrete fact. Hence, as a matter of law, I conclude that the search and seizure was not reasonable and is, therefore, unconstitutional.

BURKE, Justice, dissenting.

[¶ 36] I respectfully dissent. The majority opinion holds that a warrantless search of a vehicle incident to the arrest of its driver is not permissible under Article 1, Section 4 of the Wyoming Constitution if "safety concerns or other exigent circumstances surrounding the arrest and search are not discernable in the record." This holding, like the recent case of *Pierce v. State*, 2007 WY 182, 171 P.3d 525 (Wyo.2007), is inconsistent with Wyoming precedent establishing that the arrest itself is sufficient justification to search the arrested person and the area within his immediate control. As I analyze Mr. Holman's case, the limited search of his vehicle was reasonable under all of the circumstances. I would affirm the district court's decision that the search was proper under the Wyoming Constitution.

[¶ 37] In discussing the constitutionality of searches and seizures, we have often recited the following:

Neither the federal nor the state constitution forbids all searches and seizures; rather, they prohibit unreasonable searches and seizures. Warrantless searches and seizures are unreasonable *per se*, with but a few exceptions. Those exceptions include:

*1) search of an arrested suspect and the area within his control;* 2) a search conducted while in hot pursuit of a fleeing suspect; 3) a search and/or seizure to prevent the imminent destruction of evidence; *4) a search and/or seizure of an automobile upon probable cause;* 5) a search which results when an object is inadvertently in the plain view of police officers while they are where they have a right to be; 6) a search and/or seizure conducted pursuant to consent; and 7) a search which results from an entry into a dwelling in order to prevent loss of life or property.

*Vassar v. State*, 2004 WY 125, ¶ 13, 99 P.3d 987, 993 (Wyo.2004) (quoting *Morris v. State*, 908 P.2d 931, [936] (Wyo.1995)) (emphasis, internal citations, and punctuation different from original). *See also Clark v. State*, 2006 WY 88, ¶ 16, 138 P.3d 677, 681 (Wyo.2006). The majority opinion discusses two of these established exceptions: 1) search incident to arrest; and 4) automobile search.

[¶ 38] Under Wyoming law, analysis of either type of search rests on the foundation of *Vasquez v. State*, 990 P.2d 476 (Wyo.1999). "*Vasquez* involved the search and seizure of the passenger compartment of a vehicle incident to a lawful arrest; therefore, the analysis considered both our vehicle search and search incident to arrest jurisprudence." *Almada v. State*, 994 P.2d 299, 309 (Wyo.1999). *Vasquez* established the broad rule that, under Article 1, Section 4 of the Wyoming Constitution, such searches must be reasonable under all of the circumstances. 990 P.2d at 488.

[¶ 39] The specific question answered in *Vasquez* was, however, quite narrow:

We have not considered whether, under the state provision, the permissible *scope* of a search incident to arrest for automobiles includes containers, and the specific question before us is whether the search of the fuse box for evidence related to the crime was reasonable under all of the circumstances.

*Id.* (emphasis added). The answer to this narrow question was:

In this particular case, we believe that the arrest justified a search of the passenger compartment of the vehicle *and all containers in it, open or closed, locked or unlocked,* for evidence related to the crime and for weapons or contraband which presented an officer or a public safety concern.

*Id.* at 489 (emphasis added). *Vasquez* firmly established that exigent circumstances, such as the suspicion that evidence or weapons might be present, are sufficient to justify a broad and thorough search, extending even to closed and locked containers inside the vehicle. *Vasquez* did not say that exigent circumstances must be present to justify the more limited search of an arrested suspect and the area within his control.

[¶ 40] Cases following *Vasquez* maintained the distinction between broad, intrusive searches and limited searches of the area within an arrested person's control. For example, in *Clark*, the officer stopped

Mr. Clark because of a missing headlight, then learned that he was driving with a suspended license, had a prior outstanding ticket for the same offense, and had a Colorado warrant for his arrest for failure to appear on a domestic violence charge. ¶ 19, 138 P.3d at 682. The officer arrested Mr. Clark, and upon searching his vehicle, found marijuana in a box that was closed, secured with duct tape, and placed behind the driver's seat. *Id.*, ¶¶ 3, 20–21, 138 P.3d at 679, 682. On appeal, Mr. Clark argued that the search of his vehicle was unconstitutional "because once he had been arrested and placed in the patrol car it was not reasonable to search the vehicle." *Id.*, ¶ 12, 138 P.3d at 680. He asserted that his case "involved no officer safety issue," and that "evidence related to the crime for which he was arrested—driving under suspension—was unlikely to be found in the vehicle." *Id.*, ¶ 13, 138 P.3d at 680.

[¶ 41] We concluded that the circumstances surrounding "Mr. Clark's arrest justified a search of the passenger compartment of the vehicle *and all containers in it, open or closed, locked or unlocked,* for weapons or contraband which presented an officer safety concern." *Id.*, ¶ 21, 138 P.3d at 682 (emphasis added). Faithfully following *Vasquez, Clark* held that officer safety concerns justified a search thorough enough to encompass the contents of a closed and taped box found behind the driver's seat. Also following *Vasquez, Clark* did not say that a more limited "search of an arrested suspect and the area within his control" had to be justified by reasonable suspicion of the presence of evidence or weapons.

[¶ 42] As noted, *Vasquez* dealt with both an automobile search and a search incident to arrest. These are separate and distinct exceptions to the prohibition against warrantless searches, and the two should not be confused. An automobile search may be conducted, even if the driver is not arrested, when it is supported by probable cause. *Vassar*, ¶ 21, 99 P.3d at 996. Absent an arrest, law enforcement officers may "search an automobile without having a warrant," but only "when they have probable cause to believe that the car contains evidence of a crime or contraband." *Borgwardt v. State*, 946 P.2d 805, 807 (Wyo.1997).

[¶ 43] The automobile search necessarily involves an automobile. The search incident to arrest does not. Many of Wyoming's search incident to arrest cases coincidentally deal with automobiles, but not all of them do. *See Andrews v. State*, 2002 WY 28, 40 P.3d 708 (Wyo.2002) (search incident to arrest conducted in the home where the person was arrested). Thus, in analyzing a search incident to arrest, the focus is not on the search of the vehicle. Rather, as stated in a case cited by the majority, the focus is on the search "of an arrested suspect and the area within his control." *Moulton v. State*, 2006 WY 152, ¶ 16, 148 P.3d 38, 43 (Wyo.2006). The most distinctive aspect of a search incident to arrest is that it may be conducted only when there is a valid arrest. An arrest "requires justification by probable cause to believe that a person has committed or is committing a crime." *Putnam v. State*, 995 P.2d 632, 639 (Wyo.2000) (quoting *Wilson v. State*, 874 P.2d 215, 220 (Wyo.1994)). Because the arrest is supported by probable cause, a search incident to that arrest requires no additional justification. The crucial difference between an automobile search and a search incident to arrest is reflected in the common wording of the two exceptions. The "search and/or seizure of an automobile *upon probable cause,*" *Vassar*, ¶ 13, 99 P.3d at 993 (emphasis added), expressly requires probable cause. The "search of an arrested suspect and the area within his control," *id.*, explicitly does not require additional justification, because the arrest is already supported by probable cause.

[¶ 44] A search incident to arrest should also be distinguished from a search conducted when a person is merely stopped or detained, but not arrested. We carefully analyzed the constitutional limitations of a search incident to detention in *O'Boyle v. State*, 2005 WY 83, 117 P.3d 401 (Wyo.2005). Mr. O'Boyle was stopped for speeding. He was detained, questioned extensively by the patrolman, released, and then detained again for further questioning. He eventually consented to a search of his vehicle. After the patrolman found marijuana, he arrested Mr.

O'Boyle. The specific question before the Court was this:

[W]hether a traffic stop involving extensive questioning, followed by the defendant's consent to a second detention and more questioning, and culminating in the defendant's consent to a vehicle search was reasonable under all the circumstances.

*Id.*, ¶ 28, 117 P.3d at 409. We concluded that Mr. O'Boyle's extended detention was not supported by reasonable suspicion, and that his consent to the vehicle search was coerced. Because the patrolman had no probable cause to make an arrest, no valid consent for the search, and no "suspicion sufficient to warrant further detention or a search," the search of Mr. O'Boyle's vehicle violated Article 1, Section 4 of the Wyoming Constitution. *Id.*, ¶ 32 n. 6, 117 P.3d at 410 n. 6.

[¶ 45] Mr. O'Boyle was not arrested before his vehicle was searched, and his appeal "did not arise out of a search incident to arrest." *Id.*, ¶ 31, 117 P.3d at 410. Accordingly, *O'Boyle* cannot stand for the proposition that a vehicle search incident to arrest requires reasonable suspicion of the presence of evidence or weapons. There is "a significant distinction between investigative detentions and arrests." *Fertig v. State*, 2006 WY 148, ¶ 26 n. 3, 146 P.3d 492, 501 n. 3 (Wyo. 2006). An arrest requires probable cause to believe that a person has committed or is committing a crime. *Putnam*, 995 P.2d at 639. A detention, being "of a less intrusive nature than an arrest," is justified by the lesser standard of "reasonable suspicion that a person has committed or may be committing a crime." *Medrano v. State*, 914 P.2d 804, 807 (Wyo.1996). *See also Keller v. State*, 2007 WY 170, ¶ 14, 169 P.3d 867, 870 (Wyo.2007).

[¶ 46] This leads to my conclusion that the majority opinion in this case is inconsistent with Wyoming precedent. It blurs the legitimate distinctions among automobile searches, searches incident to detention, and searches incident to arrest. It borrows the probable cause requirement from automobile searches, and the reasonable suspicion requirement from investigatory detention cases, and imposes them as new requirements for searches incident to arrest. Funda-

mentally, it fails to acknowledge the distinction between the authority to conduct a search incident to arrest, and the proper scope of that search.

[¶ 47] The majority finds it significant that the officer who arrested Mr. Holman did not testify to any particular safety concerns. However, "the test of officer safety is objective rather than subjective, and therefore the officer need not personally be in fear" to justify a search. *United States v. Dennison*, 410 F.3d 1203, 1213 (10th Cir.2005). Whether or not the officer expressed subjective concerns for his safety, it is undisputed that he initiated contact with Mr. Holman based on a report of suspicious behavior, that he did not arrest Mr. Holman until a backup officer arrived to assist, and that the vehicle was not searched until Mr. Holman was removed and handcuffed. The objective facts indicate that, at a minimum, the officer's safety concerns were sufficient to prompt him into taking appropriate safety precautions.

[¶ 48] The majority also suggests that the validity of a search incident to arrest is dependent on the nature of the crime. If the nature of the crime indicates that weapons might be present, the majority would uphold the search. In contrast, in both *Pierce* and Mr. Holman's case, a person arrested for driving with a suspended license is portrayed as posing such minimal risk that the arresting officer may not search the area within the person's control at the time of the arrest. If this is the majority's view, then it would be appropriate to provide sufficient guidance to allow arresting officers to distinguish between crimes that imply the presence of weapons and crimes that do not. I find it impossible to articulate such guidance, because I agree with the United States Supreme Court: "Every arrest must be presumed to present a risk of danger to the arresting officer." *Washington v. Chrisman*, 455 U.S. 1, 7, 102 S.Ct. 812, 817, 70 L.Ed.2d 778, 785 (1982). The risk is no smaller in Wyoming than in the rest of the nation, and it is present regardless of the nature of the crime. Accordingly, I do not agree that the underlying crime should determine whether a search may be conducted. The "constitu-

tionality of a search incident to an arrest does not depend on whether there is any indication that the person arrested possesses weapons or evidence. The fact of a lawful arrest, standing alone, authorizes a search." *Michigan v. DeFillippo,* 443 U.S. 31, 35, 99 S.Ct. 2627, 2631, 61 L.Ed.2d 343, 348 (1979); *Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685, 694 (1969).

[¶ 49] The factors considered by the majority, such as the officer's subjective safety concerns and the nature of the crime underlying the arrest, are appropriately considered in determining whether the scope of a search incident to arrest is reasonable under all of the circumstances. That is the holding of *Vasquez,* and that is the key difference between Wyoming precedent and the federal "bright-line" rule established in *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). The issue presented in *Belton* was "the proper *scope* of a search of the interior of an automobile incident to a lawful custodial arrest of its occupants." 453 U.S at 459, 101 S.Ct. at 2863 (emphasis added). The case of *Chimel* already established that the police were authorized, upon arresting a suspect, to search his person and the area within his immediate control. *Belton* recognized, however, that lower courts had "found no workable definition of 'the area within the immediate control of the arrestee' when that area arguably includes the interior of an automobile." 453 U.S. at 460, 101 S.Ct. at 2864. *See* David S. Rudstein, *Belton Redux: Reevaluating Belton's Per Se Rule Governing the Search of an Automobile Incident to an Arrest,* 40 Wake Forest L.Rev. 1287, 1292 (2005). The workable definition provided in *Belton* was this:

> [W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.

> It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach. Such a container may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have.

453 U.S. at 460–61, 101 S.Ct. at 2864 (internal citations and footnotes omitted).

[¶ 50] In contrast to *Belton's* "bright-line rule" allowing broad and thorough vehicle searches, our decision in *Vasquez* established that the Wyoming Constitution restricts the scope of a search incident to arrest to what is reasonable under all of the circumstances. *Vasquez* does not prohibit law enforcement officers from searching an arrested person and the area within his immediate control. It prohibits law enforcement officers from expanding the scope of that search beyond reasonable limits. Because there were no exigent circumstances relating to Mr. Holman's arrest, and no reasonable suspicion that evidence or weapons might be present, the officer would not have been justified in expanding the search of Mr. Holman's vehicle to include the inside of a closed fuse box, *compare Vasquez,* or the inside of a box that was taped shut, *compare Clark.* However, there is no dispute that Mr. Holman was validly arrested upon probable cause, and no dispute that the search of his vehicle was limited to the area within his immediate control at the time of his arrest. This limited search incident to Mr. Holman's arrest was not improper.

[¶ 51] For the safety of law enforcement officers—along with the person arrested, any passengers, any bystanders, and the public at large—a limited vehicle search incident to an arrest has been, and should be, permissible under the Wyoming Constitution. I disagree with the more restrictive rule suggested by the majority. It does not "make sense to prescribe a constitutional test that is entirely at odds with safe and sensible police procedures." *United States v. Fleming,* 677 F.2d 602, 607 (7th Cir.1982); *United States v. Turner,* 926 F.2d 883, 887–88 (9th Cir.1991).

[¶ 52] In this case, the majority holds that a search incident to arrest must be justified by testimony establishing probable

cause, as though it were an automobile search, or by testimony establishing suspicion of the presence of evidence or weapons, as though it were a detention search. This represents an unjustified departure from Wyoming precedent. Consistent with that precedent, I would hold that the valid arrest of Mr. Holman justified the search of his person and of the area within his immediate control at the time of his arrest. Because the search of Mr. Holman's vehicle was limited to the area within his immediate control, it was reasonable under all of the circumstances, and I would affirm the district court's decision that the search did not violate Article 1, Section 4 of the Wyoming Constitution.